UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DQUAN FAVORITE,

               Petitioner,

                                       CASE NO. 11-10266

v.                               HONORABLE GEORGE CARAM STEEH

DAVID BERGH,

               Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I. INTRODUCTION

Pending before the Court is Dquan Favorite's pro se habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges petitioner's convictions for conspiracy to commit murder and arson, attempted murder, placing an offensive or injurious substance in or near property, arson of a dwelling house, and possession of a firearm during the commission of a felony (felony firearm). Petitioner alleges that: the evidence at trial did not support his convictions for attempted murder and conspiracy to commit murder; the trial court deprived him of his right to confront witnesses by admitting in evidence a witness's testimony from petitioner's preliminary examination; the trial court violated his constitutional rights by permitting the prosecution to admit statements of an alleged co-conspirator; and he is entitled to a new trial or an evidentiary hearing on newly discovered evidence that an important prosecution witness falsely accused him. Respondent David Bergh urges the Court to deny the petition on the ground that the state appellate court's rulings were not

-1-

contrary to, or an unreasonable application of, clearly established federal law.  Having reviewed the pleadings and state-court record, the Court agrees that petitioner is not entitled to relief.  Accordingly, the petition is denied.  A procedural history and discussion follow.

## II. THE FACTS AND PROCEDURAL HISTORY

Petitioner was charged in Saginaw County, Michigan with twelve counts:  conspiracy to commit first-degree (premeditated) murder, Mich. Comp. Laws § 750.157a; Mich. Comp. Laws § 750.316; seven counts of attempted murder, Mich. Comp. Laws § 750.91; one count of placing an offensive or injurious substance in or near real or personal property, Mich. Comp. Laws § 750.209; one count of conspiracy to commit arson of a dwelling house, Mich. Comp. Laws § 750.157a; Mich. Comp. Laws § 750.72; one count of arson of a dwelling house, Mich. Comp. Laws § 750.72; and one count of felony firearm, Mich. Comp. Laws § 750.227b.  The charges arose from the burning of a vehicle and an occupied house on Farwell Street in Saginaw, Michigan on December 10, 2007.  The prosecutor's theory was that petitioner and some acquaintances set fire to a car in a garage attached to the Farwell Street house because they suspected that an occupant of the house had set fire to Tonya Wilson's car on Sanford Street earlier that night.  Ms. Wilson was the mother of April Johnson and her brother Arnell Johnson, who was one of petitioner's co-defendants.

Petitioner was tried with Deontae Davis and Caprice Mack before a single jury in Saginaw County Circuit Court where,

[a]ccording to the testimony of witnesses, including that of Darell Hewitt, who agreed to testify "truthfully and completely . . . about the events that occurred December 10th, 2007,"[1] he, [petitioner], Caprice Mack, Deontae Davis, Arnell Johnson, Jeremy Williamson, and Deshawn Christopher were drinking and playing games at a house on Sanford Street when Tonya Wilson's car was burned.  Travis Crowley[2] testified that his girlfriend, April Johnson, called him and told him that her mom's car "got blew up."  Crowley said that Mack got on the phone and told him that "some boys had blew up Tonya['s] car, so . . . they said that they was gonna take care of it."

According to Hewitt, after Wilson's car burned, [petitioner] and Davis discussed retaliating against persons at a duplex located at 1622 Farwell Street in Saginaw because they thought Ronell Hinley had burned the car. Hewitt said that the group planned "to set the [Farwell] car on fire" and "to shoot anybody that come [sic] out of the house."  Hewitt testified, however, that there was no agreement to set fire to the house or to kill anyone.

The evidence indicated that [petitioner], Hewitt, Davis, Mack, Johnson and Williamson went to the house at Farwell to set the car on fire, but they failed to successfully do so.  The men returned to the house on Sanford and then [petitioner], Hewitt, Davis[,] Mack and Christopher made a second trip to the Farwell house.  Davis and Mack went into the garage with containers of gasoline and then ran out.  This time, the car in the Farwell house garage was set on fire.  There was evidence that Hewitt and [petitioner] had guns and that as the fire at the Farwell house spread from the garage to the house, people began to leave the house, and Hewitt and [petitioner] shot at the people as they left.

_____

[1] In return for his testimony, the prosecutor's office would dismiss the charge of conspiracy to commit first-degree murder and allow him to plead guilty to the remaining charges.  Hewitt was charged with one count of conspiracy to commit first-degree premeditated murder, seven counts of attempted murder, one count of placing offensive or injurious substances in or near real or personal property, one count of conspiracy to commit arson of a dwelling house, one count of arson of a dwelling house, and one count of possession of a firearm during the commission of a felony (felony-firearm). Hewitt's delayed application for leave to appeal was denied.  People v. Hewitt, unpublished order of the Court of Appeals, entered July 8, 2009 (Docket No. 292322).

[2] Travis Crowley, who was incarcerated for carjacking and unarmed robbery at the time of trial, said that he was at a duplex located at 1624 Sanford Street in Saginaw, MI, at the time of the fire but ultimately refused to testify.  He denied being threatened or intimidated.  As a result of Crowley's refusal to testify, his preliminary examination testimony was read to the jury.

People v. Favorite, No. 290380, 2010 WL 2507026 (Mich. Ct. App. June 22, 2010) (footnotes in original).

Petitioner, Davis, and Mack did not testify at trial or present any witnesses. Petitioner's defense was that only Darell Hewitt and Travis Crowley spoke directly about him, and Hewitt was an unreliable witness, whereas Crowley merely said that petitioner accompanied the group. According to defense counsel, reasonable doubt existed because mere presence was not enough to convict petitioner.

On November 24, 2008, the jury found petitioner guilty, as charged, of conspiracy to commit first-degree murder, seven counts of attempted murder, one count of placing an offensive or injurious substance in or near real or personal property, one count of conspiracy to commit arson of a dwelling house, one count of arson of a dwelling house, and one count of felony firearm. On January 8, 2009, the trial court sentenced petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of: life imprisonment with the possibility of parole for conspiracy to commit first-degree murder; twenty to eighty years in prison for each count of attempted murder; and ten to twenty years in prison for placing an offensive or injurious substance in or near property, for conspiracy to commit arson of a dwelling house, and for arson of a dwelling house.

Petitioner moved for a new trial on the ground that Darell Hewitt had signed an affidavit recanting his trial testimony. The trial court declined to hold an evidentiary hearing and denied petitioner's motion.

Petitioner subsequently raised his habeas claims in the Michigan Court of Appeals, which affirmed his convictions in an unpublished, per curiam opinion. See Favorite, 2010 WL 2507026. On October 26, 2010, the Michigan Supreme Court denied leave to appeal

-4-

because it was not persuaded to review the issues.  See People v. Favorite, 488 Mich. 915; 789 N.W.2d 448 (2010) (table).

On January 21, 2011, petitioner filed his habeas corpus petition.  The five grounds for relief allege that:  (1) the prosecution submitted insufficient evidence to support petitioner's convictions for attempted murder; (2) the prosecution submitted insufficient evidence to support petitioner's conviction for conspiracy to commit murder; (3) the trial court erred and deprived petitioner of his right to confront and cross-examine witnesses by allowing the prosecution to use Travis Crowley's testimony from the preliminary examination as substantive evidence against petitioner; (4) the trial court erred when it admitted in evidence statements of an alleged co-conspirator; and (5) petitioner is entitled to a new trial or an evidentiary hearing because Darell Hewitt has admitted to falsely accusing petitioner.  Respondent urges the Court to deny the petition on the basis that the Michigan Court of Appeals resolved all of petitioner's claims on the merits in an objectively reasonable manner.

### III.  THE STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in
        the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may
grant the writ if the state court arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the state court
decides a case differently than [the Supreme] Court has on a set of materially
indistinguishable facts.  Under the "unreasonable application" clause [of §
2254(d)(1)], a federal habeas court may grant the writ if the state court
identifies the correct governing legal principle from [the Supreme] Court's
decisions but unreasonably applies that principle to the facts of the prisoner's
case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part

II).  "[A] federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  Id. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court

decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24 (2002)

(per curiam)."  Renico v. Lett, 559  U.S. 766, 773 (2010).  "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S.

Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  "[E]ven a strong

case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.

(citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  To obtain a writ of habeas corpus from

a federal court, a state prisoner must show that the state court's ruling on his or her claim

-6-

"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

## IV. DISCUSSION

### A. Sufficiency of the Evidence

The first two habeas claims allege that the prosecution failed to submit sufficient evidence to support Petitioner's convictions for attempted murder and conspiracy to commit murder.

### 1. Clearly Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). After Winship, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphases in original).

This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. Federal courts, moreover,

> apply two layers of deference in reviewing habeas claims challenging evidentiary sufficiency. McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204–05 (6th Cir. 2009)). "First . . . [they] must determine whether, viewing the trial testimony and exhibits in the

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979)).  "Second, even were [they] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [they] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. (citing 28 U.S.C. § 2254(d)(2)).

Moreland v. Bradshaw,  699 F.3d 908, 916-17 (6th Cir. 2012), cert denied, ___ S. Ct. ___, No. 12-10405, 12A770, 2013 WL 2255771 (U.S. Oct. 7, 2013).

### 2.  Attempted Murder

Petitioner alleges that there was insufficient evidence to sustain his convictions for attempted murder because the facts at trial established only an intent to set a car on fire. Petitioner maintains that there was no intent to set a house on fire or to bring about a death and that, at most, he and his co-defendants displayed a reckless disregard for human life. He argues that attempted murder requires a specific intent to kill and a reckless disregard for life is not sufficient to support a charge of attempted murder.

In Michigan, the elements of attempted murder are (1) an attempt to commit the crime of murder, (2) by any means not constituting the crime of assault with intent to murder, and (3) with intent to bring about a death.  Mich. Comp. Laws § 750.91; People v. Long, 246 Mich. App. 582, 589; 633 N.W.2d 843, 847-48 (2001).  Because the statute is intended to proscribe attempts at murder that do not involve an assault, attempted murder and assault with intent to commit murder are mutually exclusive crimes.  Long, 246 Mich. App. at 589; 633 N.W.2d at 847-48.

Petitioner maintains that his crime involved an assault (shooting at the occupants of the house as they exited the burning house) and, therefore, he could not be found guilty

-8-

of attempted murder.  The Michigan Court of Appeals agreed with petitioner that shooting at the occupants of the house on Farwell Street could not be the basis for the attempted-murder charges because the shooting constituted an assault.  The Court of Appeals nevertheless noted that two distinct events occurred in this case:  the fire and the shooting. The Court of Appeals determined that Caprice Mack and Deontae Davis committed the crime of attempted murder by starting a fire that would spread to the attached house at a time when people typically are sleeping.  The Court of Appeals concluded that the evidence was sufficient to support petitioner's convictions for attempted murder because he aided and abetted Mack and Davis in attempting to kill the occupants of the Farwell Street house by setting a fire.

Petitioner's jury was instructed on aiding and abetting, and the evidence at trial established that petitioner traveled to the Farwell Street house with Davis, Mack, and three other individuals.  After the first attempt to start a fire failed, the group returned to the house on Sanford Street.  Petitioner accompanied the group to the Farwell Street house a second time.  The plan was for Davis and Mack to set the car on fire, petitioner and Hewitt were supposed to shoot the occupants of the house as they attempted to escape the fire, and Deshawn Christopher was supposed to be the "lookout."  After the second attempt to start the car on fire succeeded, petitioner shot at the occupants of the house as they exited the house.

A rational juror could have concluded from the evidence that petitioner aided and abetted Mack and Davis in attempting to murder the victims by some means other than an assault.  Thus, the evidence was sufficient to satisfy the essential elements of attempted murder beyond a reasonable doubt.

Even if the Court had concluded that the evidence was insufficient to support petitioner's convictions, the state appellate court's decision was reasonable, and the Court must defer to that decision. Petitioner therefore has no right to relief on the basis of his challenge to the sufficiency of the evidence supporting his convictions for attempted murder.

### 3. Conspiracy to Commit Murder

Next, Petitioner challenges the sufficiency of the evidence for the crime of conspiracy to commit premeditated murder. Petitioner concedes that there may have been sufficient evidence of a conspiracy and a reckless disregard for the consequences of shooting at people, but he claims there was no evidence of a conspiracy to kill anyone. The Michigan Court of Appeals disagreed and concluded that petitioner's "actions and the inferences arriving from them were sufficient to show the existence of a unity of intent born of the conspiratorial agreement." Favorite, 2010 WL 2507026, at *4.

In Michigan, the elements of first-degree, premeditated murder are:  "(1) the intentional killing of a human (2) with premeditation and deliberation." People v. Bennett, 290 Mich. App. 465, 472; 802 N.W.2d 627, 633 (2010), appeal denied, 489 Mich. 897; 796 N.W.2d 75 (2011). "A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." People v. Jackson, 292 Mich. App. 583, 588; 808 N.W.2d 541, 548 (2011), appeal denied, 490 Mich. 882; 803 N.W.2d 883 (2011).

"To prove a conspiracy to commit murder, it must be established that each of the conspirators ha[d] the intent required for murder and, to establish that intent, there must be foreknowledge of that intent." People v. Hamp, 110 Mich. App. 92, 103; 312 N.W.2d 175,

-10-

180 (1981).  "The intent to kill may be proved by inference from any facts in evidence," and "[b]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."  People v. McRunels, 237 Mich. App. 168, 181; 603 N.W.2d 95, 102 (1999).  The evidence at petitioner's trial established that he and his co-defendants:

> discussed retaliating [for the arson of Tonya Wilson's car] and picked out the target of the retaliation.  According to [Darell] Hewitt, [petitioner] and [Deontae] Davis stated that the Farwell house was to be the focus of the retaliation.  Hewitt testified that the group planned to set a car on fire located at the residence and "to shoot anybody that come [sic] out of the house" to escape the fire.  Hewitt said that Davis, [Caprice] Mack, Arnell Johnson, and Jeremy Williamson brought the gasoline to be used to set the fire, and that he and [petitioner] brought handguns to shoot at those exiting the house.  Hewitt said that when the group got to the Farwell house, he and Davis went to the house's driveway, [petitioner] and Mack went across the street, and Johnson and Williamson went into the garage.  Failing to set the car on fire, the six men returned to the house where they had been playing games and drinking.  At the suggestion of [petitioner] and Davis, [petitioner], Mack, Hewitt, Davis, and Deshawn Christopher agreed to make a second trip to the Farwell house.  On the second trip, Davis and Mack were going to start the car on fire, Hewitt and [petitioner] were supposed to shoot people that came out of the house, and Christopher was the lookout.
>
> Hewitt said that he watched Davis and Mack go into the garage with the containers of gasoline and then come running out.  Hewitt said that he ran across the street, looked back, and saw that the car parked in the Farwell house's garage was on fire.  Travis Crowley said that after a few minutes, the fire spread from the garage to the house, and after about ten or 15 minutes, people began to leave the house.  Hewitt said that from across the street, he and [petitioner] started shooting at the people when they came out of the house.  Crowley recalled that Davis said later, "That's how you set a fire."

Favorite, 2010 WL 2507026, at *3.

Darell Hewitt testified that the plan was to set fire to a car and that there was no plan to set the house on fire or to kill the occupants.  (Trial Tr. Vol. III, 78-79, Nov. 20, 2008). The Jackson standard, however, "gives full play to the responsibility of the trier of fact fairly

-11-

to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Consequently,

> a reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. Ibid.

Matthews v. Abramajtys, 319 F.3d 780, 788-89 (6th Cir. 2003).

Here, the evidence established that petitioner agreed with his co-defendants to set fire to a car in a garage attached to a house where people were likely to be sleeping. The evidence also established that petitioner agreed with other individuals to shoot the occupants of the house when they exited the house to escape from the fire.

A rational trier of fact could have concluded from this evidence that petitioner and his co-defendants intended to kill the occupants of the Farwell Street house and that they conspired among themselves to do so. The state appellate court's conclusion that sufficient evidence was presented to support petitioner's conviction was reasonable. Petitioner therefore has no right to habeas relief on the basis of his challenge to the sufficiency of the evidence supporting his conviction for conspiracy to commit first-degree murder.

## B. The Right to Confront and  Cross-Examine Witnesses

The third habeas claim alleges that the trial court deprived petitioner of his right to confront and cross-examine Travis Crowley by permitting the prosecution to use Crowley's

testimony from the preliminary examination as substantive evidence against petitioner. Petitioner contends that he did not have a full and adequate opportunity to cross-examine Crowley at the preliminary examination and that the trial court mistakenly determined that Crowley was unavailable at trial.

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees defendants in criminal prosecutions the right to be confronted with the witnesses against them.  U.S. CONST. amend. VI; Idaho v. Wright, 497 U.S. 805, 813 (1990).  The Clause "contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him."  Giles v. California, 554 U.S. 353, 358 (2008).  "Testimonial" evidence applies, at a minimum, "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  Crawford v. Washington, 541 U.S. 36, 68 (2004).  The Confrontation Clause is not implicated by nontestimonial evidence.  Whorton v. Bockting, 549 U.S. 406, 420 (2007); Davis v. Washington, 547 U.S. 813, 821 (2006).

**1.  Unavailability**

Crowley's prior statements were "testimonial" evidence because they were made at petitioner's preliminary examination.  Petitioner, however, claims that the trial court erred when it determined that Crowley was "unavailable" at trial.  The Michigan Court of Appeals disagreed and held that the trial court did not err in finding Crowley unavailable.

The transcript of trial shows that Crowley answered some questions on direct examination by the prosecutor, but then claimed not to know or not to remember other

things about which he was questioned. Following a bench conference initiated by petitioner's attorney, the trial court excused the jury and informed Crowley that the prosecutor might show him portions of his earlier testimony and that he had a duty to tell the truth. Crowley claimed to be telling the truth, and he denied being intimidated, frightened, or threatened in any way.

The trial resumed with the jury present. But when the prosecutor asked Crowley whether he saw petitioner in the courtroom, Crowley responded, "I ain't got nothin' to say, man. I ain't got nothin' to say." The prosecutor asked Crowley what he meant by that and whether he did not want to testify. Crowley replied, "I ain't talkin', that's what I'm sayin.'" The trial court excused the jury a second time and asked Crowley whether he was refusing to answer any questions. Crowley responded, "I'm done, man." The trial court then excused Crowley and permitted the prosecutor to read Crowley's testimony from the preliminary examination into the record on the basis that Crowley was unavailable. (Trial Tr. Vol. III, 125-55, Nov. 20, 2008.)

Because Crowley refused to testify at trial, he was "unavailable." United States v. Jones, 124 F.3d 781, 786 (6th Cir. 1997); United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir. 1986); Mayes v. Sowders, 621 F.2d 850, 856 (6th Cir. 1980); see also Mich. R. Evid. 804(a)(2) (stating that a witness is "unavailable" if he or she "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so"). Although petitioner asserts that the trial court should have ordered Crowley to answer the prosecutor's questions, the trial court was not obligated to threaten Crowley with a charge of contempt of court before declaring Crowley unavailable. People v. Burgess, 96 Mich. App. 390, 401; 292 N.W.2d 209, 214 (1980). And because Crowley

-14-

was already serving time in prison, a warning that he could be held in contempt of court for
not answering the prosecutor's questions probably would have been futile.

### 2. Adequacy of the Prior Confrontation

Petitioner maintains that his right to confront Crowley was violated because he had
a limited and inadequate opportunity to confront and cross-examine Crowley at the
preliminary examination. Petitioner contends that the defense attorneys did not possess
the reports and criminal history that were needed to properly cross-examine Crowley.

While it is true that the prior opportunity to cross-examine must be adequate,
Crawford, 541 U.S. at 57, the record indicates that the preliminary examination began at
9:23 a.m. Shortly afterward, petitioner's attorney requested an adjournment of the
proceedings for an hour to review a stack of discovery materials that he had received that
morning. The district court judge declined the request for an adjournment, but a lunch
break was taken at 12:37 p.m., and the proceedings did not reconvene until 2:01 p.m.
(Prelim. Examination Tr., 10, 154, Jan. 24, 2008.) Petitioner's attorney then requested "a
slight adjournment" to resolve a question about whether petitioner's trial attorney had a
conflict of interest in the case.[3] The attorney said nothing about not having had enough
time to review the discovery materials, and the district court judge stated that they would
proceed with the case. (Id. at 157-59.)

One of the victims subsequently testified, and another recess in the proceedings
occurred at 2:38 p.m. Crowley testified when the proceedings resumed at 3:11 p.m. (Id.
at 184-85.) Petitioner's attorney declined to question Crowley without giving a reason (id.

_____

[3] The attorney who represented petitioner at the preliminary examination was
substituting for petitioner's trial attorney.

at 214), but it does not appear that the failure to cross-examine Crowley was due to a lack of opportunity, because the attorneys for petitioner's three co-defendants cross-examined Crowley. (Id. at 210-20.) It is possible that petitioner's attorney declined to cross-examine Crowley because Crowley's testimony was primarily about Deontae Davis and Caprice Mack, and one of the other defense attorneys had already elicited Crowley's testimony that he did not hear the defendants make any plans. (Id. at 211.) As petitioner's trial attorney later pointed out during the trial, the only thing Crowley said about petitioner was that he left with the group that went to the house on Farwell Street.

The Court concludes that petitioner's attorney was afforded an adequate opportunity to cross-examine Crowley at the preliminary examination, but chose not to question him. Thus, petitioner's right of confrontation was not violated.

**C.  Statements of an Alleged Co-Conspirator**

The fourth habeas claim alleges that the trial court erred when it admitted in evidence Caprice Mack's comments to Travis Crowley.  The disputed comments were made when Crowley's girlfriend, April Johnson, telephoned Crowley to say that someone had set fire to Tonya Wilson's car.  Mack then got on the phone and informed Crowley that "some boys in that neighborhood had come and bl[own] up Tonya's car," and, as a result "they [were] gonna take care of it."  Mack went on to say, "[W]e got these bombs, they gonna get 'em back, we gonna take care of it."  (Id. at 193, 207-08.)  These comments were admitted in evidence when Travis Crowley's testimony from the preliminary examination was read into the record.  Petitioner claims that Mack's comments to Crowley were inadmissible hearsay, which also violated his right of confrontation and his right to due process of law.

The Michigan Court of Appeals concluded on review of this claim that the trial court did not err in admitting the evidence because Mack's statement that the conspirators had bombs and intended to retaliate against the person they thought had burned Tonya Wilson's car was admissible under Michigan Rule of Evidence 803(3) (existing state of mind, such as intent, plan, motive, etc.)  The Court of Appeals also stated that petitioner had failed to preserve the issue for appeal and that any error was harmless.

Although petitioner continues to argue that Mack's statements to Crowley were inadmissible hearsay, the alleged violation of the Michigan Rules of Evidence is not a cognizable claim  on habeas review.  Hall v. Vasbinder, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Petitioner's argument under the Confrontation Clause fails because Mack's comments to Crowley were not testimonial.  They were comments to a friend, as opposed to statements made during a police interrogation or testimony given at a preliminary hearing, former trial, or grand jury proceeding.  Statements to a friend, confidant, or companion are not testimonial within the meaning of the Confrontation Clause.  United States v. Franklin, 415 F.3d 537, 545 (6th Cir 2005); United States v. McCullough, 150 F. App'x 507, 509 (6th Cir. 2005); see also Crawford, 541 U.S. at 51 (stating that "an accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not").

As for petitioner's due process argument, an evidentiary ruling can violate due process and warrant habeas corpus relief, but only if the ruling was "so egregious that it result[ed] in a denial of fundamental fairness." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). The Supreme Court has not held that the admission of nontestimonial hearsay testimony violates the Due Process Clause. Desai v. Booker, __ F.3d __, __, No. 12-2050, 2013 WL 5539396, at *2 (6th Cir. Oct. 9, 2013).

Even if the disputed comments were erroneously admitted in evidence, the error was harmless, as the state court recognized, due to the "abundance of incriminating evidence" against petitioner, "including eyewitness testimony that [petitioner] started shooting at the occupants as they tried to escape the house." Favorite, 2010 WL 2507026, at *7. For all these reasons, the Court declines to grant relief on the basis of petitioner's claim about Caprice Mack's statements to Travis Crowley.

## D. Newly Discovered Evidence

In his fifth and final claim, petitioner alleges that he is entitled to a new trial or an evidentiary hearing because prosecution witness Darell Hewitt signed a post-trial affidavit stating that he falsely accused petitioner at trial. Petitioner did not attach Hewitt's affidavit to his habeas petition, but, according to the Michigan Court of Appeals, Hewitt states in his affidavit that he lied at trial to save himself and that petitioner is innocent of all charges. Petitioner claims that, if Hewitt had testified at trial in accordance with his affidavit, the result of the trial would have been different. The Michigan Court of Appeals, however,

-18-

called the affidavit "highly suspect," and concluded that the trial court did not abuse its discretion in denying petitioner's motion for new trial, which was based on the affidavit.

"Legally, recanting affidavits are always viewed with 'extreme suspicion.'" Williams v. Coyle, 260 F.3d 684, 708 (6th Cir. 2001).  Such caution is warranted when, as here, "[t]here is no evidence concerning the authenticity of the affidavit, the motivation of the affiant, the circumstances of the affidavit's execution, the timing of its submission, or its consistency with other evidence in the trial record."  Giles v. Wolfenbarger, 239 F. App'x 145, 148 (6th Cir. 2007).  And, to the extent petitioner is claiming to be actually innocent of the crimes for which he was convicted, he has no right to relief, because "a claim of 'actual innocence' is not itself a constitutional claim" for which habeas relief may be granted.  Herrera v. Collins, 506 U.S. 390, 404 (1993).  Rather, if proved, a claim of actual innocence "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."  McQuiggin v. Perkins, ___ U.S. ___, ___, 133 S. Ct. 1924, 1928 (2013).  The Court therefore declines to grant relief on the basis of Darell Hewitt's recanting affidavit.

## V.  CONCLUSION

The state appellate court's adjudication of Petitioner's claim on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts.  Consequently, habeas relief is not warranted, and the petition for a writ of habeas corpus is DENIED.

## VI.  DENIAL OF A CERTIFICATE OF APPEALABILITY

Before petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. at 484.

Reasonable jurists could debate the Court's assessment of petitioner's claims about the sufficiency of the evidence to support his convictions for attempted murder and conspiracy to commit murder. The Court therefore grants a certificate of appealability on petitioner's first and second claims.

The Court declines to grant a certificate of appealability on claims three, four, and five, because reasonable jurists would not find the Court's assessment of those claims debatable or wrong. Petitioner nevertheless may proceed in forma pauperis on appeal if he appeals this decision, because he was granted leave to proceed in forma pauperis in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

Dated:  October 29, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 29, 2013, by electronic and/or ordinary mail and also
on Dquan Favorite #712538, Oaks Correctional Facility,
1500 Caberfae Highway, Manistee, MI 49660.


s/Barbara Radke
Deputy Clerk